IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AARON WHITFIELD,
     Petitioner,

vs.                                 Case No. 5:07cv120/RS/EMT

WALTER A. McNEIL,[1]
     Respondent.

_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer to the petition with relevant portions of the state court record (Doc. 13). Petitioner filed a reply (Doc. 15).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 13).[2] Petitioner was charged in the Circuit Court in and for Gulf

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 13).

County, Florida, with one count of armed robbery with a firearm and one count of kidnapping to facilitate a felony with a firearm (Ex. A at 7). Following a jury trial on April 28, 2000, Petitioner was found guilty of robbery and kidnapping to facilitate a felony (Ex. A at 44, Ex. B). The same day, the trial court adjudicated Petitioner guilty and sentenced him to fifteen (15) years of imprisonment on the robbery count and a concurrent term of thirty-six (36) years of imprisonment on the kidnapping count, with pre-sentence jail credit of 123 days (Ex. A at 31–37). His sentence on the kidnapping count was subsequently reduced to a concurrent term of eighteen (18) years (*id.* at 59).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA") (Exs. C–L). On March 20, 2002, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing April 16, 2002 (Ex. L). Whitfield v. State, 812 So. 2d 413 (Fla. 1st DCA 2002) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On January 30, 2003, Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. N at 1–5). The state court summarily denied the motion in an order rendered April 9, 2003 (*id.* at 8). Petitioner appealed the judgment to the First DCA (Exs. O, P, Q). On January 21, 2004, the First DCA affirmed the decision, with the mandate issuing February 18, 2004 (Ex. R). Whitfield v. State, 864 So. 2d 562 (Fla. 1st DCA 2004).

On March 19, 2004, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. S at 1–22). Following an evidentiary hearing, at which Petitioner was represented by counsel, the court denied the motion in an order rendered October 4, 2005 (Exs. S at 70–71). Petitioner appealed the decision to the First DCA (Exs. X, Y, Z). On March 5, 2007, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing May 1, 2007. Whitfield v. State, 954 So. 2d 32 (Fla. 1st DCA 2007) (Table).

Petitioner filed the instant habeas action on May 31, 2007 (Doc. 1 at 1). Respondent concedes that the petition was timely filed (Doc. 13 at 2).

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." <u>Williams</u>, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and

concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed

_____

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on

---

[6] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

claim. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. <u>Tower</u>, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV. PETITIONER'S CLAIMS

A. <u>Ground One, sub-part A: Trial counsel was ineffective for failing to file a motion to suppress.</u>

Petitioner states the robbery for which he was convicted occurred on April 5, 1999, at the Swifty Mart store (Doc. 1 at 6).[8] He states the store clerk told law enforcement that the robber sounded like the "bug spray man" that sprayed his house (*id.*). Petitioner states a law enforcement officer recalled seeing an Ace Pest Control truck near the store and requested issuance of a BOLO (be on the lookout) (*id.*). Petitioner states the truck was located at Paula Coachman's house, and he was sitting on the front porch when the police arrived (*id.* at 7). The truck was unoccupied (*id.*). Petitioner states he was placed under arrest, and police obtained the keys to the truck from him (*id.*).

---

[8] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

He states the police used the key to unlock the truck and search it (*id.*). Police found a white t-shirt, a jacket, and a pair of pants in the truck (*id.*). He states the jacket matched the description of the jacket worn by the robber (*id.*). Petitioner contends defense counsel was ineffective for failing to seek suppression of the items on the ground that there was no basis for law enforcement to believe he was a recent occupant of the truck; therefore, they had no basis to search the truck as incident to his arrest (*id.* at 7–8). Petitioner asserts that if counsel had sought suppression of the evidence, the court would have suppressed the evidence, and he would not have been convicted (*id.* at 8).

Respondent contends Petitioner has failed to satisfy the AEDPA standard for federal habeas relief because he failed to demonstrate that the state court's adjudication of his claim was contrary to or an unreasonable application of federal law, or based upon an unreasonable determination of the facts (Doc. 9–15).

　　　　　1.　　　Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight,

to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. 690–91. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding. Lawhorn v. Allen, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting Magill v. Dugger, 824 F.2d 879, 886 (11th Cir. 1987)). Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings. Young v. Zant, 677 F.2d 792, 794, 799-800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance). Tactical or strategic decisions based on a misunderstanding of the law are unreasonable. Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003); *see also* Horton v. Zant, 941 F.2d 1449, 1462, 1463 (11th Cir.1991) (counsel's "tactical decision" to present no mitigating evidence during the sentencing phase was "unreasonable" when it was based on a misinterpretation of the law and the failure to evaluate alternative paths); Jackson

v. Herring, 42 F.3d 1350, 1367–68 (11th Cir. 1995) (counsel's strategic decision was not reasonable as it was "unsupported by sufficient investigation" and information "of the available options").

> 2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Doc. 13, Ex. S at 3–8). Petitioner appealed the state court's denial of relief by asserting it as issue (a) in his initial brief (Doc. 13, Ex. X).  That decision was affirmed by the First DCA.  While the affirmance was a per curiam opinion without reasoning, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the circuit court.  "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'"  Sweet v. Sec'y Dept. of Corr., 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); see also Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

The state court did not cite a state or federal case for the legal standard governing Petitioner's ineffective assistance of counsel claim, but it is apparent from the order denying his ineffective assistance of counsel claims that the standard applied by the court was whether Petitioner demonstrated that his counsel committed error, and that the error affected the outcome of trial.  This rule does not contradict the Strickland standard; rather, it is consistent with it.  See Early, 537 U.S. at 8 (a state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775–76 (11th Cir. 2003) (same).  Furthermore, the state court did not arrive at a result different from Supreme Court precedent on facts materially indistinguishable from a decision of the Supreme Court.  Therefore, the state court decision was not contrary to clearly established Supreme Court law.

Based upon the testimony of Petitioner and Janice Scheffer (Petitioner's defense counsel at trial) at the evidentiary hearing on Petitioner's Rule 3.850 motion, the state court found as fact that Attorney Scheffer discussed the search of the vehicle with Petitioner prior to trial, and that counsel considered the factual and legal aspects of a motion to suppress and concluded there were no grounds for a motion to suppress (Doc. 13, Ex. S at 70).  The state court further concluded that even

if counsel had filed a motion to suppress, there was a "slim to none" chance the motion would have been granted (*id.*).

Initially, Petitioner has failed to present clear and convincing evidence to rebut the state court's finding that Attorney Scheffer discussed the search of the vehicle with Petitioner prior to trial, and counsel considered the factual and legal aspects of a motion to suppress and concluded there were no grounds for a motion to suppress. Furthermore, the state court's findings are supported by the record of the post-conviction evidentiary hearing (Doc. 13, Ex. W at 28–29, 45–49). Therefore, the state court's factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); Miller-El, 537 U.S. at 340.

Additionally, Petitioner has failed to demonstrate that the state court's denial of his claim was an unreasonable application of Strickland. Even if Petitioner's counsel had succeeded in suppressing evidence found in the truck, there is no reasonable probability that the jury would have acquitted Petitioner of either charge in light of the other evidence of guilt presented at trial. Kenny Murdock testified that he was working the 11:00 p.m. to 7:00 a.m. shift at the Swifty Mart Convenience Store in St. Joe Beach, Florida on April 5, 1999 (Doc. 13, Ex. B at 22–23). He testified that in April of 1999 and prior to that, he knew Petitioner, because Petitioner worked for Ace Pest Control and had sprayed his (Mr. Murdock's) home every month for the previous year (*id.* at 24). Mr. Murdock testified that he and Petitioner talked a lot during those service calls, and Petitioner had a distinctive voice (*id.*). Mr. Murdock testified that he did not see Lenny Whitfield in the courtroom, but upon further questioning by the prosecutor, he identified Petitioner as Lenny Whitfield (*id.* at 24–25).

Mr. Murdock testified that during the early morning hours of April 5, Sal Eli delivered newspapers to the store, and Murdock exited the store with Mr. Eli after he delivered the newspapers (*id.* at 25–26). While outside, Mr. Murdock changed one of the trash barrels near the gasoline pumps and noticed someone near the ice box in front of the store (*id.* at 26). Murdock testified that it appeared the person was hiding behind the ice box, and it appeared the person had something white on his head (*id.*). Mr. Murdock approached the ice box, but no one was there (*id.*). As Murdock was entering the store, a man confronted him and said he wanted money (*id.*). Mr.

Murdock testified that he believed the person had a gun under his clothing, so he went into the store, and the man followed (*id.*).

Mr. Murdock testified that the store has several surveillance cameras that operate at all times (*id.* at 27). He further testified that he was present when the store manager gave police the videotape from the store, and he identified the videotape at trial (*id.* at 27–28). He also identified photographs produced from the videotape and testified that the time of day shown on each photograph was accurate (*id.* at 29). He testified that the time stated on each of the photographs was around 4:30 a.m., which was the time the robbery occurred (*id.*). Murdock admitted that he never actually saw a gun, and the robber never told him he had a gun, but the robber told him he did not want to hurt him, and the robber had his hand stuck in his pocket in such a way that there appeared to be a gun in the pocket (*id.* at 29, 34).

Mr. Murdock testified that when he and the robber were in the store, the robber told him that he wanted money, so Murdock went to the cash register (*id.* at 30). The robber instructed Murdock not to push any buttons, so Murdock opened one of the cash register drawers without pushing any buttons (*id.*). The robber asked, "Is that it?" and Murdock responded, "that's it" (*id.*). Murdock opened the second register, and the robber took the money (*id.*). Murdock testified that the second register had a silent alarm in it, and some of the bills in that register had pre-recorded serial numbers (*id.*). Murdock testified that when money is placed in the register with the silent alarm, the store manager writes the serial numbers of some of the bills on a card and stores the card in the safe (*id.* at 30–31). Murdock testified that he was present when the manager removed the card from the safe and gave it to police, and he identified the card at trial (*id.* at 31). Murdock also identified two (2) dollar bills as having the same serial numbers as the serial numbers appearing on the card (*id.* at 31–32). He testified that the two bills were hooked to the silent alarm of one of the cash registers on the day of the robbery, and the bills were taken by the robber (*id.* at 32).

Mr. Murdock testified that the robber then took him to a back room of the store and told Murdock he did not want to hurt him (*id.*). Murdock testified that the man also said he was going to lock him in the bathroom (*id.*). Murdock told the robber that the door could not be locked, and he heard the robber put a chair and sheets of plywood against the door (*id.* at 32–33). The robber told Murdock not to come out for a few minutes or he would hurt him (*id.* at 33). Murdock stayed

in the bathroom for approximately a minute and then heard a "beep," which indicated someone wanted gas, so he tried to push the door open (*id.* at 33). Mr. Murdock saw a woman standing at the cash register, so he yelled for help, and she helped him out of the bathroom (*id.*).

Mr. Murdock testified that the robber said several things to him, and he recognized the voice as Lenny Whitfield's, his pest control man (*id.* at 33–34). Murdock testified that he told one of the police officers that responded to the scene that the robber sounded like the Ace Pest Control man who serviced his home, and the robber was approximately the same height and build as the pest control man (*id.* at 47).

Sal Eli testified that when he arrived at the Swifty Mart on April 5, he noticed an Ace Pest Control truck sitting in a dark area across the street and approximately 40–50 feet from the parking lot of the Swifty Mart (*id.* at 48–52). Mr. Eli testified that after he left the Swifty Mart, he delivered papers to others customers and arrived at the EZ-Serve approximately 10–15 minutes after he left the Swifty Mart (*id.* at 54–55). While he was inside the EZ-Serve, he saw an Ace Pest Control truck getting gas at the EZ-Serve gas pumps (*id.* at 55). Mr. Eli testified that the driver of the truck came into the store to pay for the gas (*id.* at 55–56). Mr. Eli testified that he usually buys a soda at the EZ-Serve every morning, and he probably bought a soda on April 5 (*id.* at 56). He testified that he would have paid for the soda with five quarters (*id.*).

Melinda Reynolds testified that she was working at the EZ-Serve on the morning of April 5, and was notified at approximately 4:30 a.m. by police that a robbery had occurred at another convenience store (*id.* at 58–59). She testified that just prior to the notification by police, a male customer purchased gas, and Sal Eli came into the store (*id.* at 59). Ms. Reynolds testified that Mr. Eli purchased a drink and paid for it with quarters, as was his usual practice (*id.* at 59). She testified that the man who purchased gas gave her five (5) one dollar bills to pay for four dollars' worth of gas and obtain one dollar's worth of change to use the pay telephone (*id.* at 59–60). Ms. Reynolds testified that after she received notification of the robbery from the Sheriff's Office, she waited for a deputy to come to the store and then "changed out" her cash register drawers, meaning, she "closed out" the drawers so that no one else could put money into them or take money out (*id.* at 60–61). She testified that immediately prior to closing out the drawers, the only customers in the store were Sal Eli and the man who bought four dollars' worth of gas (*id.* at 61). Ms. Reynolds further testified

that the store has one surveillance camera, and the police officer took the videotape from the camera (*id.*). She identified the videotape and two photographs from the tape (*id.* at 61–62). Ms. Reynolds identified Sal Eli as one of the men in the photographs (*id.* at 63). She testified that she also gave police the cash register tape and some one dollar bills (*id.* at 64). She identified photocopies of two (2) of the dollar bills as the bills she gave to the police officer (*id.*). She read the serial numbers off the bills and testified that they were the same serial numbers as on the card previously identified by Mr. Murdock as the card kept in the safe at the Swifty Mart (*id.* at 64–65). Ms. Reynolds testified that the cash register tape reflected the four-dollar gas purchase, which she specifically recalled was paid in four (4) one dollar bills, and Sal's soft drink purchase, which she recalled was paid in quarters (*id.* at 65). Ms. Reynolds further testified that the man who purchased gas drove a white pest control truck with green writing on it (*id.* at 66).

Deputy Vince Everett testified that on April 5, 1999, at 4:37 a.m., he was dispatched to the Swifty Mart to respond to a robbery call (*id.* at 67–68). While en route to the Swifty Mart, he noticed an Ace Pest Control truck at the gas pump of the EZ-Serve store (*id.* at 69–70). When he arrived at the Swifty Mart, he spoke with Ms. Guisnell, a customer who arrived at the store after the robbery (*id.* at 70). Ms. Guisnell told Deputy Everett that she went inside the Swifty Mart and heard a voice coming from the rear of the store (*id.*). She told Everett that she located the voice in the bathroom, and the door to the bathroom had been barricaded with lumber and other items (*id.*). Ms. Guisnell told Everett she moved as much of the barricading material as she could, and the store clerk crawled out of the bathroom (*id.*). Deputy Everett testified that he also spoke with the clerk, Mr. Murdock (*id.* at 71). Everett testified that he asked Mr. Murdock whether he was able to recognize the robber in any way, and Murdock initially said no, but upon further discussion, Mr. Murdock said the robber's voice sounded a lot like the person who sprayed his home for pests (*id.* at 71–72). Deputy Everett testified that Mr. Murdock described the robber as a white male, approximately 5'7"–5'8" in height and 160–170 pounds in weight (*id.* at 73).

Tom Godwin, an employee of the Gulf County Sheriff's Office, testified that he investigated the crime scene at the Swifty Mart and found a pair of eyeglasses on the ground near the corner of a building adjacent to the Swifty Mart and a series of footprints in the sand leading to the glasses (*id.* at 102–03). He identified photographs of the glasses and footprints (*id.* at 103). Mr. Godwin

testified it was apparent someone had knelt near the corner of the building (*id.* at 104). He testified that the glasses were unusual because they had two small silver pieces in three places and small numbers and lettering just inside the "legs" (*id.*). Mr. Godwin testified that he sent the glasses to the crime lab to be examined for fingerprints, but none were found (*id.* at 105–06). He then took the glasses to Pam Little at the Newberry Eye Clinic (*id.* at 104–05).

Pamela Little testified that she repairs, adjusts, and fits eyeglasses for customers at the Newberry Eye Clinic (*id.* at 106). She testified that she knew Aaron Lenny Whitfield, and she identified Petitioner in the courtroom (*id.* at 106–07). She testified that she had worked on Petitioner's glasses approximately eighteen months prior to April 5, 1999, and was familiar with them (*id.* at 107–08). She identified the glasses in the photograph as glasses she had seen Petitioner wear (*id.* at 107). She also testified that Investigator Godwin brought her several pairs of glasses, and she identified the glasses in the photograph as Petitioner's (*id.* at 108).

Joe Nugent, a captain with the Gulf County Sheriff's Office, testified that he responded to the robbery at the Swifty Mart, and while en route he noticed a small white pickup truck that passed him on the road (*id.* at 109–10). He testified there were not many other vehicles on the road at that time (*id.* at 110–11). He testified that he obtained information from Deputy Everett that Mr. Murdock had said the robber's voice reminded him of his pest control man (*id.* at 111–12). Captain Nugent then spoke with Sal Eli, who told him he had seen an Ace Pest Control truck parked behind the Swifty Mart several minutes prior to the robbery (*id.* at 112). He testified that he assisted Investigator Godwin in taking photographs of the outside of the store and casting the footprints (*id.* at 112). He stated he observed the footprints at the rear of the store, between the store and the adjacent building, and leading back to where the Ace Pest Control truck was seen (*id.* at 112).

Captain Nugent testified that he had known Lenny Whitfield for years, and he identified Petitioner as Lenny Whitfield (*id.* at 113). He also testified that he knew that Petitioner worked for Ace Pest Control and had seen him in the Ace Pest Control truck, which was white with green lettering (*id.* at 113–14). He testified that 45–60 minutes after the dispatch, he arrested Petitioner at Paula Coachman's house (*id.* at 113). He stated the Ace Pest Control truck was parked in the driveway in Ms. Coachman's front yard when he arrived at the house (*id.* at 114). Captain Nugent testified that he and Sheriff McKeithen arrested Petitioner, and he did a "preliminary search and

inventory" of the truck and then impounded the vehicle (*id.* at 114). Nugent identified a pair of shoes as the shoes Petitioner was wearing at the time he was arrested (*id.* at 115). He also testified that he made dental casts of shoe prints found near the store (*id.* at 115–16). Captain Nugent then identified Petitioner as the person in the photographs from the EZ-Serve shown entering the store and standing at the cash register (*id.* at 117).

Carl Burian, a crime laboratory analyst with the Florida Department of Law Enforcement, testified that he was trained in the field of latent print examination and shoe track examination (*id.* at 84–85). He testified that he received two submissions from the Gulf County Sheriff's Office; the first submission included three dental stone casts and a pair of Rado slip-on shoes, and the second submission included one dental stone cast (*id.* at 86–87). Mr. Burian stated he was asked to compare the shoes with the shoe tracks present in the casts to determine if the shoes could have created the tracks (*id.* at 87). He testified that the shape, size, and tread design of Petitioner's shoes were similar to the shape, size, and tread design of the shoe tracks present in the casts taken from the crime scene (*id.* at 91–94).

Considering this evidence, which does not include any testimony regarding clothing found in the truck during the search, there is no reasonable probability that any juror would have had reasonable doubt about Petitioner's guilt. Therefore, Petitioner failed to demonstrate he was prejudiced by counsel's failure to seek suppression of the clothing. Having failed to satisfy the prejudice prong of the <u>Strickland</u> standard, Petitioner is not entitled to federal habeas relief on this claim.

B.    <u>Ground One, sub-part B:  Trial counsel rendered ineffective assistance for failing to object to the State's impermissible in-court identification of Petitioner.</u>

Petitioner states that during Mr. Murdock's testimony, the prosecutor provoked an impermissibly suggestive in-court identification (Doc. 1 at 10). Petitioner states Mr. Murdock initially could not identify him as Lenny Whitfield, his pest control man, so the prosecutor moved behind Petitioner in the courtroom and asked, "You don't see Lenny Whitfield here?" (*id.*). Mr. Murdock then identified Petitioner as Lenny Whitfield. Petitioner contends defense counsel should have objected to the identification as impermissibly suggestive, and if counsel had objected, the court would not have allowed the identification (*id.* at 10–11).

Respondent acknowledges that one the state court's factual findings underlying this claim was erroneous (*see* Doc. 13 at 15–16). However, Respondent contends that the other factual findings are supported by the record, and the court's adjudication of the claim was not contrary to or an unreasonable application of <u>Strickland</u> (*id.* at 16). Therefore, the state court's denial of the claim is entitled to deference (*id.* at 16–19).

1.    Clearly Established Supreme Court Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged <u>Strickland</u> standard described *supra*.

2    Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Doc. 13, Ex. S at 8–11). Petitioner appealed the state court's denial of relief by asserting it as issue (b) in his initial brief (Doc. 13, Ex. X). That decision was affirmed by the First DCA.

In the lower court's written order denying the claim, the court found as fact that the victim identified Petitioner by his voice because it was the voice of the "bug spray man" who regularly sprayed his home (Doc. 13, Ex. S at 70). The court found that Petitioner was also identified by a deputy sheriff from the store video during the robbery, and he was identified by the unusual jacket he was wearing (*id.*). The court found that the evidence identifying Petitioner as the robber came from several sources and was overwhelming; therefore, Petitioner was not denied effective assistance based upon counsel's failure to object the victim's in-court identification (*id.*).

Although the state court incorrectly identified the video from which the law enforcement officer identified Petitioner as from the store that was robbed instead of the store where the stolen dollar bills were passed, the court's other findings are supported by the record, including the court's finding that Petitioner was identified from several different evidentiary sources, including the victim (who identified Petitioner from his voice and distinctive jacket), Captain Nugent (who identified Petitioner as the person entering and standing at the register of the store where the stolen dollar bills were passed), Pamela Little (who identified the eyeglasses found near the scene as Petitioner's), and Carl Burian (who testified that Petitioner's shoes were similar to the shape, size, and tread design of the shoe tracks present in the casts taken from the crime scene). Therefore, although one aspect of one of the state's court's factual findings was inaccurate, this inaccuracy did render the state

court's decision an adjudication based upon an unreasonable determination of the facts. *See, e.g.*, Hunter v. Sec'y for Dep't of Corr., 318 Fed. Appx. 856, 858–59, 2009 WL 624057, at **1–2 (11th Cir. 2009) (unpublished) (state court's citation to incorrect transcript pages, when substance of whole transcript supported state court's conclusion, did not render state court's finding unreasonable).[9]

In light of the strength of the other identification evidence and the obvious weakness of the victim's in-court identification (the victim first testified he did not see Lenny Whitfield in the courtroom, and he admitted that the robber wore a covering around his head that covered everything but his eyes), there is no reasonable probability that the outcome of Petitioner's trial would have been different if counsel had objected to Mr. Murdock's in-court identification. Therefore, Petitioner is not entitled to federal habeas relief on this claim.

C.      Ground One, sub-part C: Trial counsel rendered ineffective assistance for failing to investigate and depose witnesses prior to trial.

Petitioner contends defense counsel was ineffective for failing to depose the following witnesses: (1) the deputy who searched the truck, (2) Pam Little, the eyeglass technician, (3) the victim, and (4) Pamela Coachman, the owner of the house where Petitioner was arrested (Doc. 1 at 12–13). Petitioner states that if counsel had deposed the deputy, counsel would have learned that the search of the truck was unconstitutional; therefore, the items discovered therein were subject to suppression. He states if counsel had deposed Ms. Little, counsel would have learned that Ms. Little had not worked on Petitioner's glasses for eighteen months prior to the robbery, and Ms. Little did not have any receipts or work orders proving that she worked on the glasses or that the glasses were Petitioner's. He states if counsel had deposed the victim, counsel would have learned that the victim did not actually see a weapon during the robbery, and the jury would not have been exposed to the prejudicial fact that Petitioner was originally charged with armed robbery. Petitioner states Ms. Coachman's testimony would have supported Petitioner's version of events regarding "the crack cocaine deal" and the search of the truck. In his reply brief, Petitioner states that Ms. Coachman would have testified that she, Petitioner, and a man named Tiger were together using illegal drugs

---

[9] The undersigned cites Hunter only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

when Petitioner and Tiger left to procure more drugs (Doc. 15 at 9). Petitioner states Ms. Coachman would have also testified that Tiger had an unusual voice, and she would have testified that Petitioner made no attempt to evade or flee upon arrival of the arresting officers (*id.*).

Respondent contends the state court decision is supported by the record (Doc. 13 at 19–21). Furthermore, Petitioner failed to satisfy either prong of the <u>Strickland</u> standard (*id.* at 21–22). Therefore, and the state court's denial of his claim is entitled to deference.

1.    Clearly Established Supreme Court Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged <u>Strickland</u> standard described *supra*. Pursuant to <u>Strickland</u>, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. <u>Strickland</u>, 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding. <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting <u>Magill v. Dugger</u>, 824 F.2d 879, 886 (11th Cir. 1987)). Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings. <u>Young v. Zant</u>, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance). Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. <u>Chandler</u>, 218 F.3d at 1314 n.14 (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).[10]

2    Federal Review of State Court Decision

---

[10] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Doc. 13, Ex. S at 11–17). Petitioner appealed the state court's denial of relief by asserting it as issue (c) in his initial brief (Doc. 13, Ex. X). That decision was affirmed by the First DCA.

In the lower court's written order denying the claim, the court found as fact that Petitioner's trial counsel personally investigated every witness identified by Petitioner and either could not locate the witness, or the witnesses would not provide favorable testimony (Doc. 13, Ex. S at 70). The court further found that some of the witnesses that Petitioner identified as favorable trial witnesses were involved in a drug deal, and it was reasonable for counsel to forego "opening the door" to that line of questioning (*id.* at 70–71). The court further found that defense counsel deposed a tire expert, and counsel knew the substance of the trial testimony of all of the State's witnesses through the sworn statements of those witnesses or other means (*id.* at 71).

Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings. Furthermore, the findings are supported by the record. At the post-conviction evidentiary hearing, Petitioner's defense counsel, Janice Scheffer, testified regarding her investigation of the case:

> A.    I took one deposition, I believe it was a tire expert person, and I believe that was a telephonic deposition, because that person didn't give a pretrial statement, something that we could look at. Everyone else, every police officer, every witness had given a pretrial statement, and I felt like I knew what they were going to say and I just, I didn't take the depositions of someone whose testimony I anticipated and I felt like I knew what they were going to say.

> Q.    In your decision not to take depositions were you anticipating using, being able to use the reports that they had made to impeach them if they give [sic] inconsistent testimony at trial?

> A.    That's what I did. I had the statements parceled out and my potential questions to ask of them. That's how I prepared for the trial and that's what's in my file now.

> Q.    Questions that you had prepared and you were anticipating asking the witnesses, they had already been answered in an incident report that had been prepared?

> A.    Yes, sir.

Q.      You were prepared to use those reports to impeach just as you would a deposition if you had had it?

A.      That's correct but with the exception of Pam Little.

Q.      Why did you choose not to depose her?

A.      She had stated, if I'm not mistaken, Mr. Witten who was the State Attorney at that time, gave a report or a [sic] officer's statement of what she would testify to.  She stated there and she stated on the stand that the last time she worked on Mr. Whitfield's glasses was a long time before.  The records had been destroyed; there were no records.  She said that, she said that in the statement and she said that on the stand.  She would not have been able to produce any work orders or anything like that.  I didn't see any reason to delay the trial.  My strategy was to argue to the jury that she had nothing to back up what she said, she had no work orders, she had no records of anything and that's what I did at the trial.

(Doc. 13, Ex. W at 31–32).  With regard to potential, favorable witnesses identified by Petitioner, Attorney Scheffer testified that the only name Petitioner gave her was Cindy Davis (*id.* at 34). Scheffer testified that she attempted to locate Ms. Davis, including talking to neighbors, but Ms. Davis was gone, and Petitioner had no other ideas of how to locate her (*id.*).  Attorney Scheffer testified that Petitioner never told her that Ms. Coachman was a potential alibi witness (*id.*) Furthermore, Ms. Coachman was an alleged drug dealer or user, and counsel felt she would not have been a credible witness (*id.*).  Attorney Scheffer testified that Petitioner never told her of any possible defenses such as misidentification or an alibi; he simply insisted on requiring the State to prove its case (*id.* at 34–35).

In light of Attorney Scheffer's testimony (that she reviewed pre-trial statements from each of the State's trial witnesses and was prepared to impeach them if they testified inconsistently at trial, that Petitioner informed her of only one potential defense witness, whom she was unable to locate, and that she was aware of all of the information identified by Petitioner as discoverable with pre-trial investigation and deposition), the state court's determination that counsel was not deficient in her investigation of the case was not unreasonable.  Additionally, Petitioner's assertions as to what Ms. Coachman would have said during a pre-trial deposition or at trial are purely speculative and, therefore, insufficient to support the aspect of his claim concerning counsel's failure to investigate Ms. Coachman as a potential witness.

Moreover, Petitioner failed to demonstrate a reasonable probability that further investigation by counsel would have changed the outcome of his trial. With regard to pre-trial investigation concerning the circumstances of the search of the truck, even if counsel had discovered grounds to suppress the clothing found during the search of the truck, there is no reasonable probability the outcome of trial would have been different, as discussed in Ground One, subpart A, *supra*. With regard to discovery of the fact that Mr. Murdock did not actually see a gun, and Ms. Little had not worked on Petitioner's glasses for eighteen months, defense counsel presented these facts to the jury through cross-examination and closing arguments (*see* Doc. 13, Ex. B at 36, 108, 144–45, 159), and counsel successfully argued a motion for judgment of acquittal on the firearm aspect of the robbery charge (Doc. 13, Ex. B at 135). Petitioner failed to satisfy either prong of the <u>Strickland</u> standard; therefore, he is not entitled to relief on this claim.

      D.    <u>Ground One, sub-part D: Trial counsel interfered with Petitioner's right to testify at trial.</u>

Petitioner states defense counsel informed the jury during opening statements that Petitioner was going to testify (Doc. 1 at 14). He states he informed counsel that he wanted to testify, but counsel informed him that if he testified, the State could reveal the specific nature of his prior convictions to the jury (*id.* at 15). Petitioner asserts that as a result of this misadvice, he did not testify (*id.* at 15–16). He asserts there is a reasonable probability that the jury would not have convicted him it the jurors heard his version of events as follows:

> . . . on the early morning in question, [the Petitioner] drove his Ace Pest control truck to an area which he knew where he could purchase crack cocaine from a local drug dealer known to the Petitioner by the name of Tiger. After making the purchase of a $20.00 piece of crack cocaine, Tiger told the Petitioner that he would give the Petitioner another "twenty cent piece of crack cocaine" if he could borrow the Petitioner's vehicle to go pick up some more dope. The Petitioner further would have testified that was not an unusual request from a drug dealer. The Petitioner agreed to the offer, but, because he was responsible for the company's truck, he would have to go with Tiger to pick up the dope. After some more discussion it was finally agreed upon that the Petitioner would accompany Tiger to the intersection at Balboa and Hwy. 98 where the Petitioner got out of the truck so that Tiger could drive on to pick up the drug package. The Petitioner waited there at Balboa and Hwy. 98 for approximately 20 to 25 minutes, until Tiger returned with his truck to pick up the Petitioner, the [sic] Tiger gave the Petitioner the promised 20 cent piece of crack cocaine, along with 10.00 dollars in one five dollar bill and five one dollar

bills, which Tiger told Petitioner was for gas for the truck he used. Thereafter, the Petitioner drove the truck to E-Z Serve store where he pumped $4.00 worth of gas. Then the Petitioner drove back to Paula Coachman's house where the Petitioner smoked the crack cocaine given to him by Tiger for the use of the truck. The Petitioner was later arrested at Paula Coachman's home and the clothing was found by the Gulf County Sheriff [sic] Department, in which [sic] the Petitioner kept his jacket and towel in the truck in case bad weather required them in that the jacket was for cold or rain, the towel was for rain and for cleaning his hands of pesticide he used while at work.

(*id.* at 14–15, 17).

Petitioner additionally contends defense counsel was ineffective to failing to ensure an on-the-record waiver of Petitioner's right to testify (*id.* at 16–17).

　　　　1.　　　Clearly Established Supreme Court Law

A criminal defendant's right to testify on his own behalf "is one of the rights that are essential to due process of law in a fair adversary process,'" and it is "[e]ven more fundamental to a personal defense than the right of self-representation." Rock v. Arkansas, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (quoting Faretta v. California, 422 U.S. 806, 819 n. 15, 95 S. Ct. 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)) (finding right rooted in Due Process Clauses of Fifth and Fourteenth Amendments, in Compulsory Process Clause of Sixth Amendment, and in Fifth Amendment guarantee against compelled testimony). This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel. *See* Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999) (citing United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992)). The appropriate vehicle for a claim that defense counsel's acts led to a violation of this right, either because counsel failed to inform the defendant of his right to testify or because counsel forced him to testify, is an ineffective assistance of counsel claim. *See* Teague, 953 F.2d at 1534; *see also* Brown v. Artuz, 124 F.3d 73, 77–78 (2d Cir. 1997). The clearly established federal standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland, *supra*.

　　　　2.　　　Federal Review of State Court Decision

Petitioner raised this claim as Ground Four in his Rule 3.850 motion (Doc. 13, Ex. S at 17–20). Petitioner appealed the state court's denial of relief by asserting it as issue (d) in his initial brief (Doc. 13, Ex. X). That decision was affirmed by the First DCA.

In the lower court's written order denying the claim, the court found as fact that if Petitioner had testified at trial in the way and manner he testified at the evidentiary hearing, he would have incriminated himself (Doc. 13, Ex. S at 71). The court further found that Petitioner had several prior felony convictions, and even though the jury would not have learned about the specific nature of the prior felony convictions, the jury would have learned that he was a convicted felon on several counts (*id.*). The state court concluded that defense counsel used sound professional judgment in advising Petitioner not to testify (*id.*). Therefore, Petitioner was not denied effective assistance of counsel based upon counsel's alleged interference with his decision whether to testify (*id.*).

Petitioner contends the state court's assignment of credibility to Attorney Scheffer's testimony instead of Petitioner's was unreasonable because the court provided no basis for its credibility determination (*see* Doc. 15 at 10–11). Petitioner additionally explains that his argument that there was no on-the-record waiver of his right to testify was not intended as a separate sub-claim of ineffective assistance of counsel but in support of his argument that the state court's credibility determination was unreasonable because the lack of an on-the-record waiver is clear and convincing evidence of the lack of evidentiary support for the state court's credibility finding (*id*. at 11).[11]

Determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses. Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to

---

[11] Even if Petitioner asserted an independent claim of ineffective assistance of counsel for counsel's failure to ensure the trial court conducted an on-the-record inquiry into whether Petitioner knowingly, voluntarily, and intelligently waived his right to testify, his claim is without merit. The Eleventh Circuit has held that there is no per se requirement that the trial judge advise the defendant of his right to testify and conduct an on-the-record inquiry into the defendant's decision not to testify every time a criminal defendant does not testify. *See* United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998). Therefore, Petitioner failed to establish deficient performance by counsel.

redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

The undersigned rejects Petitioner's argument that the state court's assignment of credibility to Attorney Scheffer's testimony is not entitled to deference simply because (1) the state court did not provide an explanation as to why it found her testimony credible, and (2) the trial transcript did not include Petitioner's on-the-record waiver of his right to testify. Section 2254 provides that the state court's factual findings, including credibility determinations, are entitled to deference unless Petitioner presents clear and convincing evidence that rebuts the finding. 28 U.S.C. § 2254(e) (emphasis added). Petitioner has not done so in this case. Therefore, the state court's factual findings, including any credibility determinations, are entitled to deference.

Furthermore, the record supports the state court's conclusion that defense counsel did not perform unreasonably in advising Petitioner not to testify and did not interfere with his decision whether to testify. Initially, the record conclusively refutes Petitioner's assertion that defense counsel told the jury he (Petitioner) was going to testify. The record shows that defense counsel's comment that she had no witnesses other than Petitioner was made outside the presence of the jury (*see* Doc. 13, Ex. B at 6–7). Additionally, at the evidentiary hearing in the Rule 3.850 proceeding, Petitioner's trial counsel, Janice Scheffer, testified that she told Petitioner that if he testified, he would have to state whether he had a prior conviction for a felony or misdemeanors involving dishonesty, and if he did, the number of such prior convictions (Doc. 13, Ex. W at 33). She testified that she never told Petitioner he would have to provide any specifics concerning his prior convictions, including the nature of the offenses (*id.*). In light of the record, Petitioner has failed to demonstrate that the state court's rejection of his claim (that counsel interfered with his right to testify by misadvising him that the specific nature of his prior convictions would be revealed to the jury and by telling that jury that he would testify) was an unreasonable application of Strickland. Therefore, he is not entitled to relief on this claim.

E. Ground One, sub-part E: "The cumalatie [sic] error of the Petitioner's counsel fell below that of reasonably competent counsel."

Case No. 5:07cv120/RS/EMT

Petitioner does not provide any argument in support of this claim in his petition (*see* Doc. 1 at 17). Respondent contends Petitioner failed to exhaust this claim, and it is now procedurally defaulted (Doc. 13 at 29). Respondent further contends the claim is without merit as the Supreme Court has not issued a decision establishing a cumulative error analysis for federal habeas claims (*id.* at 29–30). Moreover, the state court found no constitutional error as to each of the four individual grounds of ineffective assistance of counsel asserted by Petitioner; therefore, with no individual errors, there can be no cumulative error or effect (*id.* at 30).

In his reply, Petitioner contends he properly exhausted the claim by raising it at the Rule 3.850 evidentiary hearing (Doc. 15 at 11). Petitioner concedes that the Supreme Court has not definitively or expressly recognized a constitutional basis for cumulative error analysis, but he contends Strickland and the Sixth Amendment provide a constitutional basis for the claim (*id.* at 11–12).

The undersigned concludes that Petitioner exhausted his "cumulative effect" claim by raising it at the evidentiary hearing and in his brief on appeal of his post-conviction motion (*see* Doc. 13, Ex. W at 21, Ex. X).[12] The state court concluded that none of Petitioner's alleged individual errors amounted to ineffective assistance of counsel and, therefore, denied his motion for post-conviction relief (Doc. 13, Ex. W at 70–71).

The Supreme Court has not recognized the cumulative error doctrine in the context of an ineffective assistance of counsel claim.[13] Although the Eleventh Circuit has noted, on direct appeal

---

[12] At the evidentiary hearing, Petitioner testified as follows:

Q [by Petitioner's post-conviction counsel]: Okay. And your contention is that those errors by themselves and looking at them together —

A. Cumulative effect, yes, sir.

Q. — prejudiced the outcome of your case?

A. Most definitely.

[13] The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at *5 (quoting United States v. Cronic, 466 U.S. 648, 659 n. 26, 104 S. Ct. 2039,

of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary, *see* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United State v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)), the Eleventh Circuit has not expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable in federal habeas. *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[14]

---

80 L. Ed. 2d 657 (1984)).

[14] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas. The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas. *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir.

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See* United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, *supra*; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir.1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007). Thus, Petitioner must show error with respect to at least two of his individual claims.

In the instant case, none of the alleged errors of trial counsel that this court substantively reviewed, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally unfair trial. Therefore, Petitioner is not entitled to federal habeas relief on this claim. *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* Walls v.

---

1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims. *See* Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007). The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue. *See* Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland. *See* Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

McNeil, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished) (same).

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12<u>th</u> day of April 2010.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).